IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAWN COX ON BEHALF OF
L.L.M. (A MINOR),

    Plaintiff,

v.                                                                                              No. CV 13-00949 CG

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's *Motion to Remand to Agency for Rehearing, with Supporting Memorandum* ("Motion"), filed on May 4, 2014, (Doc. 21), and Defendant's *Response to Plaintiff's Motion to Reverse and Remand* ("Response"), filed on July 7, 2014, (Doc. 22).

On March 3, 2010, Stacy Stevens filed an application for Supplemental Security Income ("SSI") on behalf of the Claimant, L.L.M., her minor child. She alleged L.L.M.'s disability began May 11, 2002. (Administrative Record ("AR") 256-69). L.L.M.'s application was denied on May 7, 2010, (AR 207-10), and also upon reconsideration on August 20, 2010. (AR 214–17). A request for a hearing was filed October 5, 2010 (AR 218-19) and a hearing was held on February 17, 2012 before Administrative Law Judge ("ALJ") Donna Montano, (AR 184-201). L.L.M., L.L.M.'s maternal grandmother and legal guardian, Dawn Cox, and L.L.M.'s therapist, Brenda Baker, testified at the hearing. (AR 184-201). She was unrepresented by counsel. (AR 187). The ALJ issued her opinion on May 24, 2012, finding that L.L.M. was not disabled under 20 C.F.R. § 416.924(a). (AR 29). Through counsel, Ms. Cox filed an application for review by the Appeals Council on

L.L.M.'s behalf on June 19, 2012, which was summarily denied, (AR 1–3), making the decision of ALJ Montano the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Ms. Cox argues that the ALJ committed reversible, legal error because: (1) her credibility determination is legally insufficient; (2) the ALJ failed to discuss probative evidence and weigh medical opinions supporting L.L.M.'s allegations; and (3) the ALJ failed to adequately develop the record during the hearing. (Doc. 21 at 12).

The Court has reviewed the Motion, the Response, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ did not properly weigh the medical opinions in the record, the Court finds that the Motion should be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

## I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at

1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II. Applicable Law and Sequential Evaluation Process**

For purposes of supplemental security income ("SSI"), a child under the age of eighteen is "disabled" when she "has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001) (citing 42 U.S.C. § 1382c(a)(3)(C)(i)). In light of this

definition for disability, a three-step sequential evaluation process has been established for evaluating a child's disability claim. 20 C.F.R. § 416.924(a); *Briggs*, 248 F.3d at 1237. The ALJ "must determine, in this order, (1) that the child is not engaged in substantial gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404." *Briggs*, 248 F.3d at 1237 (citing 20 C.F.R. § 416.924(a)).

At the third step, in order to determine whether a child's impairment meets or equals a listed impairment, the ALJ must assess whether the impairment, alone or in combination with other impairments, medically or functionally equals a listing. 20 C.F.R. § 416.924(a). In doing so, the ALJ considers all relevant factors, including: (1) how well the child initiates and sustains activities, how much sleep she needs, the effects of structured or supportive settings; (2) how the child functions at school; and (3) the effects of the child's medications or other treatments. *Id.* at § 416.926a(a)(1)-(3); *Briggs*, 248 F.3d at 1237-38.

The ALJ must assess the child's functioning in terms of six domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi); *Briggs*, 248 F.3d at 1238. A child is disabled if she has "marked" limitations in two of these domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926A(d).[1]

---

[1] The terms "marked" and "extreme" are defined in 20 C.F.R. § 416.924a(e).

### III. Background

Stacey Stevens initially applied for disability benefits on behalf of her minor child, L.L.M., due to diagnoses of bipolar disorder, Attention Deficit and Hyperactivity Disorder ("ADHD"), Post Traumatic Stress Disorder ("PTSD"), and Asperger's Syndrome. (AR 207, 214). L.L.M. was born five weeks premature, and has experienced delays in maturing since her birth. (AR 515, 615-16). She was exposed to domestic violence from a very early age, (AR 543, 565), suffered head trauma from a car accident at the age of five, (AR 469), and has a history of seizures. (AR 408-10). She was removed from her biological home by Child Protective Services, (AR 543), and placed in treatment foster care due to behavioral concerns. (AR 541-46). She is now in the custody of her maternal grandmother, Dawn Cox, who brings this action on her behalf. (AR 186). L.L.M. is currently in a special education program at school. (AR 33-34).

The basis for L.L.M.'s disability claim was that, as a result of physical and emotional trauma throughout her life, she suffers from various behavioral and cognitive issues, including anger, aggression towards others, self-mutilation, and lack of self-control and insight. (AR 102-07, 541-46, 548-60, 568-83). The administrative record includes her medical records, school reports and records, earnings records, work history report, disability application, hearing testimony, and non-examining State agency evaluations, which were used by the ALJ to evaluate L.L.M.'s disability claim.

At step one, the ALJ found that L.L.M. had not engaged in any substantial gainful activity. (AR 22). At step two, she found that L.L.M. had a severe combination of impairments, specifically bipolar, ADHD, asthma, Asperger's Syndrome, and PTSD. (*Id*).

The ALJ proceeded to step three. First, the ALJ explained that she specifically

considered whether L.L.M.'s impairments satisfied or met any of the listed impairments. (AR 22). She determined, based on State Agency medical and psychological consultants' opinions, that they did not. (*Id*).

The ALJ then found that L.L.M. did not have an impairment or combination of impairments that functionally equals the listings. (AR 22). In making her determination, the ALJ considered L.L.M.'s symptoms. (AR 22-23). Although she determined that L.L.M.'s medically determinable impairments could reasonably be expected to produce the alleged symptoms, she found the statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with her other findings. (AR 23). The ALJ based this finding on daily activities reported by L.L.M., her mother, grandmother, and teachers, medical records, State Agency medical opinions, and testimony from L.L.M.'s grandmother and therapist. (AR 23-24). The ALJ noted that since no physician or counselor offered an opinion that L.L.M. was disabled, she gave significant weight to the State Agency medical opinions. (AR 24).

The ALJ considered the same evidence to make her disability finding. (AR 23-29). In terms of the six domains, the ALJ found that L.L.M. had less than marked limitations in acquiring and using information; less than marked limitations in attending and completing tasks; less than marked limitations in interacting and relating to others; no limitation in moving about and manipulating objects; less than marked limitations in the ability to care for herself; and no limitation in health and physical well-being. (AR 24-29). Accordingly, she found that L.L.M. was not disabled under the Social Security Act. (AR 29).

### IV. Analysis

Ms. Cox claims that the ALJ committed several reversible errors by: (1) improperly supporting her credibility determination with boilerplate conclusions; (2) failing to discuss probative evidence and weigh medical opinions supporting L.L.M.'s allegations; and (3) failing to adequately develop the record during the hearing. (Doc. 21 at 12). She contends that the ALJ failed to sufficiently explain why she rejected subjective and objective evidence in the record, precluding the court from being able to meaningfully review the findings. (*Id*).

The Commissioner responds that the ALJ articulated specific reasons for finding the Plaintiff not fully credible, and that the adverse credibility determination was supported by substantial evidence. (Doc. 22 at 3-5). The Commissioner also maintains that the ALJ considered all record evidence, although she is not required to discuss every piece of evidence in the record. (Doc. 22 at 5). In addition, the Commissioner argues, the ALJ's disability finding is supported by substantial evidence. (Doc. 22 at 6). Finally, the Commissioner contends that the ALJ satisfied her duty to develop the record by questioning L.L.M. and Ms. Cox at the hearing and giving an opportunity for Ms. Cox to provide the Agency with additional relevant information. (Doc. 22 at 9-11).

The ALJ's analysis and weighing of the evidence in the record is essential for this Court to assess whether her findings, as to L.L.M.'s impairments and credibility, are supported by substantial evidence. *See Clifton v. Charter*, 79 F.3d 1007, 1009 (10th Cir. 1996); *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). Thus, the Court will first address L.L.M.'s claim that the ALJ failed to address probative evidence and weigh medical opinions.

A.     *Ms. Cox's Challenge to the ALJ's Weighing of the Evidence*

Ms. Cox argues that the ALJ failed to discuss probative evidence supporting L.L.M.'s claim. (Doc. 21 at 15). She maintains that, while the ALJ relied heavily on school records and a teacher's questionnaire, the ALJ did not discuss treatment and medical records from Drs. Mark Fallon-Cyr, M.D. and Betsy Williams, PhD, ABN, FACPN, or from Namaste Child and Family Development Center, where L.L.M. was placed in treatment foster care. (Doc. 21 at 15-16). Ms. Cox alleges that these records are particularly probative of L.L.M.'s allegations of disability. (*Id*).

Ms. Cox further contends that the ALJ improperly gave significant weight to State Agency medical consultants because no treating physician or counselor had opined that L.L.M. was disabled due to her impairments. (Doc. 21 at 16). First, she argues that there is no requirement that a treating physician provide an opinion that a claimant is disabled. (*Id*). Second, she claims that in affording significant weight to State Agency physicians, the ALJ failed to properly weigh other medical opinions in the record, including the opinion of L.L.M.'s therapist, Ms. Brenda Baker, LISW. (Doc. 21 at 16-7).

The Commissioner maintains that the ALJ considered the entire record, and that she is not required to discuss every piece of evidence. (Doc. 22 at 5). Furthermore, the Commissioner argues, substantial evidence, including teacher reports, Dr. Paul Mattox, M.D.'s treatment notes, and statements by L.L.M., her mother, and grandmother, supports the ALJ's findings as to L.L.M.'s impairments. (Doc. 22 at 6-9).

The Commissioner also argues that the ALJ properly relied on State Agency medical opinions, as they are "highly qualified experts in evaluating disability claims." (Doc. 22 at 9). In addition, in terms of weighing other medical opinions, the

Commissioner claims that there are no medical opinions to weigh, because treatment notes do not constitute medical opinions. (*Id*).

    1.    *Requirement to Address Probative Evidence and Weigh All Medical Opinions in the Record*

An ALJ must consider all evidence in the record, although she is not required to discuss every piece of evidence. *Clifton*, 79 F.3d at 1009-10. However, the ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id*. (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)); *see also Briggs*, 248 F.3d at 1239. In the absence of findings supported by specific weighing of the evidence in the record, the ALJ leaves the Court unable to assess whether relevant evidence adequately supports her conclusion. *Clifton*, 79 F.3d at 1009.

Specifically, the Social Security Regulations require the ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b). The Regulations define medical opinions as statements that reflect "judgments about the nature and severity of your impairment(s)." 20 C.F.R. 404.1527(a)(2). Mere collections of treatment notes, including subjective complaints and treatment prescribed, do not constitute medical opinions. *Eacret v. Barnhart*, No. 04-5062, 120 Fed. Appx. 264, 267 (10th Cir. Jan. 10, 2005); *Moua v. Colvin*, No. 12-5161, 541 Fed. Appx 794, 797 (10th Cir. July 30, 2013).

Every medical source opinion should be weighed by the ALJ in consideration of the following, applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003); *see also* 20 C.F.R. §§ 404.1527(c)–(d) and 416.927 (c)–(d). Based on these factors, "an examining physician's opinion is normally entitled to more weight than a non-examining physician's opinion." *Kerwin v. Astrue*, 224 Fed. Appx. 880, 884 (10th Cir. 2007) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.") (internal citations omitted)). Ultimately, the ALJ must give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (citations omitted). Failure to do so constitutes legal error. *See Kerwin*, 224 Fed. Appx. at 884.

*2. The ALJ's Analysis of Medical Opinions and Other Evidence in the Record*

In this case, the ALJ noted that "no treating physician or counselor has offered the opinion that the claimant is disabled due to her impairments." (AR 24). For this reason, she afforded significant weight to the State Agency medical consultants' opinions. (AR 24, 26). The ALJ considered the testimony of L.L.M.'s therapist, Ms. Baker, but she determined that it did not support limitations any more severe than she had found. (AR 24). In addition, the ALJ relied on primary school reports, (AR 25), and teacher questionnaires, (AR 27, 29), to make her determination.

Ms. Cox argues that the ALJ failed to discuss significantly probative medical

evidence from the record. (Doc. 21 at 15). She cites the global assessment of functioning ("GAF") scores of 41 and 45 made by Dr. Mark Fallon-Cyr, M.D. and Mary Borgeson, MA, respectively.[2] (*Id*). She also refers to plans and notes from L.L.M.'s treatment foster care team at Namaste Child and Family Development Center, which document her issues with impulse control, self-harm, and aggression, among others. (*Id*).

Moreover, Ms. Cox argues, this probative evidence includes medical source opinions, which the ALJ is required to weigh in making her determination. (Doc. 21 at 16-18). She claims that there is no requirement that a medical professional provide an opinion that she is disabled, and that such a determination is reserved to the Commissioner. (Doc. 21 at 16). In particular, Ms. Cox maintains that the ALJ was required to have weighed Ms. Baker's testimony along with other physicians' opinions, even though she is not an "acceptable medical source" under the regulations. (Doc. 21 at 17).

The Commissioner responds that the ALJ need not discuss every piece of evidence in her decision. (Doc. 22 at 5). The Commissioner argues that, in any event, substantial evidence supports the ALJ's decision. (Doc. 22 at 6). The evidence discussed, including State Agency medical opinions, school reports, teacher questionnaires, physician treatment notes, and statements from L.L.M. and her family, provide the requisite evidentiary support. (Doc. 22 at 6-9). The Commissioner emphasizes that the record shows medication is controlling L.L.M.'s behavior. (Doc. 22 at 7). Furthermore, the Commissioner maintains that there are no medical opinions in the

---

[2] "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" *Langley*, 373 F.3d at 1122 n.3 (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) [DSM–IV–TR] at 32).

record for the ALJ to weigh, and therefore she did not commit legal error by granting significant weight to the State Agency medical consultant opinions. (Doc. 22 at 9).

The ALJ is required to discuss probative evidence that undercuts her findings. In particular, the ALJ is required to weigh all medical opinions in the record. This is true even when the source does not opine that a claimant is disabled. Indeed, the opinion that a claimant is disabled is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *See Aragon v. Astrue*, No. 06-2285, 246 Fed. Appx. 546, 548 n.1 (10th Cir. July 31, 2007); *Lackey v. Barnhart*, No. 04-7041, 127 Fed. Appx. 455, 457 (10th Cir. April 5, 2005). A medical opinion need only be a medical source's judgment of the severity of a claimant's impairment. 20 C.F.R. 404.1527(a)(2).

The ALJ improperly gave significant weight to State Agency medical consultants' opinions without weighing other medical opinions in the record. First, L.L.M.'s GAF score by Dr. Fallon-Cyr, (AR 104), which fell between "41–50[,] indicates '[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job." *Langley*, 373 F.3d at 1122 n.3 (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) [DSM–IV–TR] at 34)). The Tenth Circuit has continuously held that an ALJ cannot ignore a claimant's GAF score in determining whether she is disabled. *Givens v. Astrue*, No. 07-5021, 251 Fed. Appx. 561, 567 (10th Cir. Oct. 18, 2007) (finding the ALJ erred by not analyzing the claimant's GAF score as a medical opinion, as required by the regulations and case law); *Simien v. Astrue*, No. 06-5153, 2007 WL 1847205 (10th Cir. June 28, 2007) (remanding ALJ decision where he ignored child claimant's GAF scores in his analysis); *Lee v. Barnhard*, No. 03-7025, 117 Fed Appx 674, 678 (10th Cir. Dec. 8, 2004)

(finding that although GAF score alone does not necessarily evidence an impairment rising to the level of disability, it should not have been ignored). Here, the ALJ did not even mention L.L.M.'s GAF scores.

Second, Ms. Brenda Baker, LISW, provided opinions as to L.L.M.'s impairments and her level of functioning compared to other children her age. In a letter from September 2012, Ms. Baker stated that L.L.M. "will need long term therapy and support to help her to be able to cope daily. She may never be able to function as well as the average person." (AR 653). The letter expresses concern for L.L.M.'s anger, which "can become uncontrollable at times to where she can hurt herself or others." (AR 653). Ms. Baker also testified at the hearing, explaining that L.L.M. behaves like a much younger child, and is often socially inappropriate. (AR 197). In order for L.L.M. to behave like a child her age, "it's going to take a lot of constant, repetitive setting of boundaries" because she is "somewhat limited on understanding." (*Id*).

Ms. Baker is not an "acceptable medical source" pursuant to 20 C.F.R. §§ 1513(a)(1)-(5).[3] "Acceptable medical sources" include physicians, psychologists, certain optometrists and podiatrists, and certain speech-language pathologists. *Id*. Rather, Ms. Baker is a licensed independent social worker, or an "other" medical source, pursuant to 20 C.F.R. § 1513(d)(1). The distinction between acceptable medical sources and other medical sources "is necessary because '[i]nformation from ... 'other [medical] sources' cannot establish the existence of a medically determinable impairment.' Further, 'only acceptable medical sources can give ... medical opinions' and 'be considered treating sources ... whose medical opinions may be entitled to controlling weight.'" *Bowman v.*

---

[3] The Commissioner does not address this issue in her Response. She only argues that there are no "opinions" the ALJ failed to weigh. (Doc. 22 at 9).

*Astrue*, 511 F.3d 1270, 1275 n.2 (10th Cir. 2008) (citing Social Security Ruling ("SSR") 06–03p, 2006 WL 2329939 at *2).

Nevertheless, the opinions of "other" medical sources should still be weighed. Indeed, the Regulations state that "regardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d). Social Security Ruling 06-03p clarifies that the factors to weigh medical opinions of acceptable medical sources "set out in 20 C.F.R. §§ 404.1527(d) and 416927(d) apply equally to 'all opinions from medical sources who are not acceptable medical sources as well as from other [non-medical] sources.'" *Franz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (citing SSR 06-03p, 2006 WL 2329939, at *4). It follows that:

> depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*Franz*, 509 F.3d at 1302 (citing SSR 06-03p, 2006 WL 2329939 at *5). Adjudicators are instructed to "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Franz*, 509 F.3d at 1302 (citing SSR 06-03p, 2006 WL 2329939 at *6).

Given their relationship, Ms. Baker's opinion as to L.L.M.'s functioning and the severity of her impairments is one that should have been weighed against other medical opinions in the record. At the time of the hearing, Ms. Baker had been L.L.M.'s therapist

for two years, (AR 195), and had observed her in a variety of settings, including at home, in school, and individually, (AR 653). As such, the ALJ was required to adequately explain why she afforded significantly more weight to the opinions of non-examining State Agency medical consultants. Simply stating that she considered Ms. Baker's testimony is not enough.

In conclusion, the ALJ erred when she stated that there were no medical opinions in the record, besides those of the State Agency medical consultants. The ALJ improperly afforded the Agency opinions significant weight, without discussing the opinions of Dr. Fallon-Cyr and Ms. Baker. Therefore, the ALJ did not apply the correct legal standards.

B.      *Ms. Cox's Challenge to the ALJ's Credibility Finding*

The ALJ found that, although L.L.M.'s "impairments could reasonably be expected to produce the alleged symptoms, the statements concerning the intensity, persistence, and limiting effects of the [ ] symptoms are not credible to the extent they are inconsistent with" the finding that her impairments do not functionally equal the listings. (AR 23). In support, the ALJ stated that there is no record of L.L.M. seeking treatment for her asthma, recent electroencephalogram ("EEG") recordings had been normal, and L.L.M.'s "'seizures' were behavioral in origin." (*Id*). The ALJ referenced a psychiatric evaluation by Dr. Paul Mattox, M.D. in 2009, but did not explain the findings of the evaluation, or how it fit in to her analysis. (*Id*). The ALJ also referred to several statements made in 2009 by L.L.M.'s mother that she was doing well, there were no behavior problems in school or at home, and there had been good medication compliance. (*Id*). As with the disability finding, the ALJ placed significant weight on State Agency medical consultants'

opinions, and did not weigh other medical opinions. (AR 24). She relied on L.L.M.'s daily activities as reported in her testimony. (*Id.*) The ALJ considered Ms. Baker's testimony, but did not find it supported limitations more serve than those found in her decision. (*Id.*)

Ms. Cox argues that the ALJ's credibility finding is legally insufficient because it is boilerplate and precludes meaningful review. (Doc. 21 at 13). She claims that the ALJ failed to provide specific reasons for her credibility finding and failed to link the finding to evidence in the record. (Doc. 21 at 14).

The Commissioner responds that the ALJ is not required to engage in a formal factor-by-factor analysis of the evidence, as long as she states specific evidence she relied upon in making her credibility finding. (Doc. 22 at 3-4). Here, the Commissioner contends, the ALJ relied upon L.L.M.'s EEG examinations, her daily activities as stated in her testimony and school reports, the fact that medication controlled her behavioral issues, and that no physician or counselor had opined she was disabled. (Doc. 22 at 4-5).

In making an adverse credibility finding, the ALJ must discuss significantly probative evidence supporting a claimant's symptoms and explain why she rejected that evidence. *Hardman*, 362 F.3d at 681. Here, the ALJ provided specific reasons for her credibility finding, including various medical records, daily activities, and statements from L.L.M.'s mother. (AR 23-24). However, the ALJ's analysis is legally flawed. As discussed above, the ALJ improperly placed significant weight on the opinions of non-examining State Agency medical consultants without acknowledging other medical opinions in the record. As with her disability finding, the ALJ cannot ignore medical opinions that support L.L.M.'s allegations without adequately explaining why she has rejected them. Because

of this, the Court cannot meaningfully review the ALJ's analysis of the medial record as it relates to her credibility finding.

## V. Conclusion

For the reasons discussed above, the Court concludes that the ALJ failed to properly weigh the medical opinions in the record, and therefore failed to make the proper credibility finding of L.L.M.'s complaints of disabling symptoms. On remand, the ALJ should properly weigh the medical opinions, including those discussed in this Order. She should adequately explain the weight she gives each opinion as it relates to her credibility and disability findings. The Court does not decide any other issue raised by Ms. Cox, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Remand to Agency for Rehearing, with Supporting Memorandum*, (Doc. 21), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE